FILED
03 JUL 16 PM 1:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WALLACE W. HONEYCUTT,

Plaintiff,

vs.

JEFFERSON COUNTY BOARD OF EDUCATION,

Defendant.

Case No. CV 01 BE-3325-S

ENTERED
JUL 16 2003

**MEMORANDUM OPINION**

This case is before the court on the following motions: Defendant's Motion for Summary Judgment (Doc. 19) and Defendant's Motion to Strike (Doc. 25). The court held a hearing on these motions on Wednesday, April 16, 2003. The court, having considered the briefs and evidentiary submissions and having heard oral arguments on these motions, finds that Defendant's Motion to Strike (Doc. 25) is due to be DENIED and Defendant's Motion for Summary Judgment (Doc. 19) is due to be GRANTED in its entirety.

The first motion before the court is Defendant's Motion to Strike (Doc. 25). Defendant moved the court to strike exhibits 3 and 4 from Plaintiff's Response and Opposition to Defendant's Motion for Summary Judgment (Doc. 23), arguing that Plaintiff improperly attempted to base his argument on evidence "that has not been identified, authenticated, or shown to be either relevant or probative of any matter in issue." (Doc. 25). Although the exhibits described in Defendant's Motion to Strike (Doc. 25) are probably





improper submissions, this court, having considered Plaintiff's exhibits 3 and 4 in their entirety and in every effort to give every possible benefit to Plaintiff, hereby DENIES Defendant's Motion to Strike (Doc. 25).

The second motion before the court is Defendant's Motion for Summary Judgment (Doc. 19). The court, having considered the briefs and evidentiary submissions and having heard oral arguments on this motion, finds that the motion is due to be GRANTED in its entirety, for reasons stated on the record and more fully elaborated on below.

## I. SUMMARY OF FACTS[1]

Plaintiff Wallace Honeycutt is a coach and teacher for the Jefferson County Board of Education. Plaintiff also serves on occasion as a substitute bus driver for the Board. His duties include filling in for regular bus drivers when need arises. Plaintiff can only substitute as a bus driver when his bus duties do not conflict with his primary responsibilities at the school.

Toward the end of the 2000-2001 school year, a permanent bus driver position became vacant in the Leeds school zone. In accordance with standard Board procedure, the Board placed an advertisement for the open position in the Administrative Bulletin. The advertisement listed the position to be filled and the June 14, 2001, deadline for submitting applications. Plaintiff applied for the open position and was granted an interview in August, 2001, despite missing the deadline. An interview committee, consisting of the following

---

[1]This opinion only addresses facts that are relevant to Plaintiff's claims based on the August 2001 Leeds school zone vacancy allegations. Many facts offered by Plaintiff in Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 23) fall outside the statutory time limitation and are omitted for reasons stated *infra*.

individuals, was assembled: Alberto "Tico" Sanchez, Route Manager (Hispanic male); Tom Callahan, a bus driver in the McAdory school zone and Administrative Intern (Caucasian male); David Parker, a certified bus driver and employee in the Department of Transportation in Lubrication (African American male); and Cathy Staggs, Director of Transportation for the Board (Caucasian female).

During his interview, Plaintiff responded to several standard questions that are asked of all prospective bus drivers and that bear directly on the applicant's knowledge of proper bus driving procedure and student safety. The interview committee first asked Plaintiff about standard safety procedures utilized in crossing railroad tracks. Plaintiff incorrectly answered this question, stating that the stop arm would be used and failing to mention that the emergency brakes must be engaged at all railroad crossings to keep the bus from being pushed into the path of an oncoming train if the bus is hit from the rear. The interview committee also asked Plaintiff about the proper procedure for loading and unloading students, and Plaintiff failed to satisfy the committee with his answer. Plaintiff failed to identify the proper lights to be used during loading and unloading students as well as failed to state that the emergency break must be used every time the bus stops.

After an interview was complete, each member of the interview committee had to complete the standard Interview Scoring Guide and return this form to Ms. Staggs for review and consideration. Each committee member who interviewed Plaintiff recorded similar scores on the "technical knowledge" section. Two committee members specifically noted Plaintiff's lack of knowledge about safety procedures. According to Ms. Staggs, Plaintiff was not awarded the position based upon his deficiencies illuminated at the interview.

Plaintiff does not allege that any component of the interview process itself was discriminatory in nature.

Because of Plaintiff's poor answers to standard questions about proper bus driving procedure and student safety, Ms. Staggs suggested to the Classified Personnel Director that Plaintiff should drive for the State School Bus Driver Trainer to ensure that he followed proper safety procedures. The Personnel Director agreed with Ms. Staggs and temporarily removed Plaintiff from the substitute bus drivers list until such time as he could acquire the necessary training.

On August 10, 2001, Ms. Staggs spoke with Plaintiff concerning the regular bus driving position. She informed him that she was not comfortable with him operating a school bus because of his inability to respond correctly to the interview committees' questions on proper bus procedures and student safety. She also informed him that he could not substitute for other drivers until he received additional training, and encouraged him to complete the requested training. Plaintiff has since completed this training and his name has been returned to the substitute bus driver list again. Plaintiff subsequently filed an Equal Employment Opportunity Commission (EEOC) charge on August 21, 2001, alleging discrimination based on his race, his age, and for retaliation. Plaintiff then filed a complaint in this court alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact are presented and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The fact that

the parties do not agree on each and every fact is not significant; the law requires only that "there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). *See also* Celotex v. Catrett, 477 U.S. 317, 327 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 251-52. Mere speculation is insufficient to create an issue of fact and defeat a properly-supported motion for summary judgment. See Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995); Ramsey v. Leath, 706 F.2d 1166, 1169-70 (11th Cir. 1983). However, all reasonable doubts about the facts should be resolved in favor of the non-movant. *See* Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990)(*citing* Anderson, 477 U.S. at 252).

## III. ANALYSIS

### A. Race Discrimination Claim Under Title VII

#### 1. Plaintiff has preserved only one Title VII claim for race discrimination

To obtain judicial consideration of a Title VII claim, a plaintiff must first file a charge of discrimination within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. §2000e-5(e). *See* National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002); *see also* Delaware State Coll. v. Ricks, 449 U.S. 250, 256 (1980), Pijnenburg v. West Georgia Health System, Inc., 255 F.3d 1304, 1305 (11th Cir. 2001). The statutory limitation period is designed in part to "protect employers from the burden of defending claims arising from employment decisions that are long past." Ricks, 449 U.S. at 256-257 (internal citations omitted). Thus, the plaintiff may only recover for discriminatory actions

that occurred within the one-hundred-eighty-day period preceding the filing of his EEOC charge.

Plaintiff filed his charge of discrimination on August 21, 2001, shortly after he was informed that he would not be selected as a regular bus driver and that he would need additional training to remain a substitute driver. All claims based on discriminatory acts occurring prior to February 22, 2001, are necessarily time barred, unless Plaintiff can establish a continuing violation of his civil rights.

Plaintiff alleges that he has been subjected to racial discrimination in violation of Title VII throughout his employment with the Jefferson County Board of Education. The court, however, finds that any purported claim of a continuing violation will not provide any relief from the limitations period. Because Plaintiff's allegations are necessarily based on a discrete employment decision, Plaintiff's allegations do not form the basis of a continuing violation. *See* National R.R. Passenger Corp, 536 U.S. at 114-116.

Title VII requires those claiming discrimination to file a complaint with the EEOC within 180 days of the alleged discrimination. Plaintiff failed to file such complaints regarding all but one of the instances in which he alleges racial discrimination. Plaintiff did file an EEOC complaint in reference to his interview in August, 2001. This claim is the only claim that has been properly preserved for litigation. Therefore, with the exception of the August 2001 claim, Plaintiff's claims for Title VII race discrimination are hereby summarily dismissed as time barred.

Because Plaintiff's claims that arose prior to February 22, 2001 are time barred, the court is left to consider the specific hiring decision that gave rise to the EEOC charge, *i.e.*, the

decision not to hire the plaintiff for a permanent bus driver position in the Leeds area and the decision to temporarily remove him from the substitute bus driver list.

**2. Plaintiff's Sole Remaining Claim for Title VII Race Discrimination**

**A. Plaintiff's *Prima Facie* Case**

To evaluate an employment discrimination claim based on circumstantial evidence,[2] the court should follow the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The plaintiff must first establish a *prima facie* case of discrimination by showing each of the following: (1) he belongs to a racial minority; (2) that he is qualified for the position he is seeking and for which his employer is considering applicants; (3) that his employer rejected his application; and (4) after such rejection, the employer either filled the position with a person not of the same racial minority or left the position open. *See* McDonnell Douglas, 411 U.S. at 802; Sledge v. Goodyear Dunlop Tires, N. Am., Ltd, 275 F.3d 1014, 1015 (11th Cir. 2001). The present case turns on the second element, which is the requirement that the applicant establish that he is qualified for the position.

To establish a *prima facie* case under Title VII, the plaintiff must establish that he is qualified for the position at issue. *See* Jones v. Firestone Tire & Rubber Co., 977 F.2d 527, 533 (11th Cir. 1992). In August, 2001, the Department of Transportation granted Plaintiff an interview for the permanent bus driver position. Plaintiff was interviewed by an interview committee in accordance with Board procedure. The committee consisted of a diverse group of individuals, all with experience in the area of school bus operations and transportation of

---

[2] Plaintiff does not contend that he has "direct evidence" in support of his claims of race discrimination, nor can he.

students. Members of the interview committee conducted the interview pursuant to ordinary Board procedures, utilized a standard Interview Scoring Guide, and asked standardized questions during the interview.

Throughout the interview, the committee asked Plaintiff fundamental questions about bus driving procedure and safety. Every prospective bus driver is required to know and be able to perform safety procedures as they are essential to the safety of the children riding on the bus. Plaintiff's answers to two questions regarding critical aspects of safety were unacceptable and illustrated a fundamental lack of knowledge about those procedures. When asked about the safety procedures required when crossing a railroad track, Plaintiff incorrectly stated that the stop arm would be used, could not identify the appropriate lights to be utilized, and made no mention of the essential requirement that the emergency brakes must be engaged at all railroad crossings to keep the bus from being pushed into the path of an oncoming train if hit from the rear. Additionally, the committee asked Plaintiff about the standard procedure for loading and unloading students. Plaintiff again failed to identify the proper lights to be used during loading and unloading and disregarded the fact that the use of the emergency brake is imperative to ensure that no children are hurt while getting on or off of the bus.

Because Defendant rightfully requires that all of its bus drivers have a basic procedural knowledge to ensure the safety of the children who ride the bus and because Plaintiff could not meet necessary safety standards, the court finds that Plaintiff was not

qualified for the position at issue,[3] and that Plaintiff has failed to establish his *prima facie* case of race discrimination under Title VII.

**B. Defendant's Articulated Legitimate Non-Discriminatory Reason**

Under the McDonnell Douglas framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. The establishment of the *prima facie* case shifts the burden to the employer to produce legitimate, non-discriminatory reasons for the challenged employment action. Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir. 1988). Even assuming that Plaintiff met his burden of establishing a *prima facie* case,–which the court finds he did not meet-- the court finds that Defendant has established legitimate, non-discriminatory reasons for not hiring Plaintiff into a full-time bus driving position.

To satisfy its burden of production, "the defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dept. Comm. Affairs v. Burdine, 450 U.S. 248, 254-255 (1981). Once the defendant proffers a legitimate, non-discriminatory reason for the decision at issue, the McDonnell Douglas-Burdine presumption drops out of the case and the inquiry is whether the defendant intentionally discriminated against the plaintiff. U. S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983). The ultimate burden of proving that defendant intentionally discriminated against the plaintiff "remains at all times with the plaintiff."

[3] According to Ms. Staggs, at least two other employees or applicants who were unable to demonstrate an ability to perform fundamental safety procedures were not hired or allowed to drive until such time as they became qualified by receiving appropriate training. (Staggs Depo., pp. 96-101).

Burdine, 450 U.S. at 253.

The court finds that Defendant did not hire Plaintiff into a full time bus driver position because he essentially "failed" the two safety questions that were posed to him in his interview. First, he did not know the proper procedure for approaching, stopping, and then crossing railroad tracks. He did not know which lights were to be used as part of the procedure and did not mention the use of emergency brakes. Additionally, Plaintiff did not demonstrate knowledge of proper procedure as to loading and unloading students during his interview. He could not describe the proper lights which are to be used during loading and unloading of students. He also failed to include the use of the emergency brake in the procedure. This deficiency was noted by multiple members of the interview committee. His inability to answer standard questions properly resulted in an unfavorable assessment of the interview. These concerns led Ms. Staggs to discuss Plaintiff's deficiencies with the Director of Classified Personnel and ultimately Plaintiff was required to undergo additional training allowing him to operate school buses for the Board, even in a substitute capacity. Therefore, the court finds that Defendant has articulated a legitimate, non-discriminatory reason for its employment decision.

**C. Plaintiff's Showing of Pretext**

Although Defendant's burden to proffer a legitimate, non-discriminatory reason for the employment decision at issue is only one of production, the court finds that the reasons provided by the Board are completely race neutral. Plaintiff argued that Defendant's articulated legitimate, non-discriminatory reason, *i.e.*, Defendant's regard for Plaintiff as being unqualified, was pretext for unlawful discrimination based upon race. Mere argument

without admissible evidence is insufficient for Plaintiff to carry his burden. The Record is completely devoid of evidence that Defendant made its employment decision based upon the Plaintiff's race or sex. Plaintiff was not able to point to any evidence to even suggest that the reason given to him for the Defendant's employment decision was motivated by animus based on Plaintiff's race. Plaintiff has not shown pretext and any attempt to do so is necessarily based on conjecture and speculation - a subjective belief without supporting evidence that the employment actions taken were made because of his race.

Because this court finds that Plaintiff failed to establish his *prima facie* case and alternatively failed to show that Defendant's articulated legitimate, non-discriminatory reason was pretext for racial discrimination, this court hereby GRANTS Defendant's Motion for Summary Judgment (Doc. 19) on Plaintiff's racial discrimination claim under Title VII.

**B. Plaintiff's Retaliation Claim under Title VII**

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove the following elements: 1) he participated in an activity protected by Title VII; 2) he suffered an adverse employment action; and 3) a causal connection exists between the participation in the protected activity and the adverse employment decision. *See* Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000). Concerning the third element of a *prima facie* retaliation claim, the Eleventh Circuit has stated:

> This Court has interpreted the causal link requirement broadly; a Plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.

E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993)(*citing* Simmons v. Camden Cty. Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir. 1985), *cert. denied*,

474 U.S. 981 (1985)).

This court finds that Plaintiff failed to establish a *prima facie* retaliation case. Plaintiff has shown this court that he filed an EEOC Charge of Discrimination with the EEOC on August 21, 2002. On August10, 2001, Defendant notified Plaintiff that he was rejected for the permanent bus driver position and removed from the substitute driver list. Plaintiff was informed of his rejection and removal *before* he engaged in a protected activity. Therefore, Defendant could not have retaliated against Plaintiff if Plaintiff did not file an EEOC charge before Defendant made its decision.

Further, the court finds that Plaintiff has presented no evidence to support his claim of retaliation. Plaintiff testified at his deposition that he has no basis for his retaliation claim:

> Q: In your complaint you allege – you allege that the Board has retaliated against you for making a complaint based on racial discrimination. Do you understand that to be part of your lawsuit?
>
> **A: No, I don't.**
>
> Q: Well, if it is a part of your lawsuit, do you have any knowledge of any specific instances or examples of retaliation that the Board has committed against you?
>
> **A: No, I haven't.**

(Honeycutt Depo., pp. 121-122)(emphasis added). Further, Plaintiff, in his Response and Opposition to Defendant's Motion for Summary Judgment (Doc. 23), failed to even mention his retaliation allegations. Thus, the court hereby GRANTS Defendant's Motion for Summary Judgment (Doc. 19) on Plaintiff's retaliation claim.

## CONCLUSION

Plaintiff has not met his threshold burden with respect to the employment decision at issue in this case. He has failed to present substantial evidence that raises a genuine issue of material fact that any decision maker for the Defendant was motivated by unlawful animus with respect to that decision. For reasons stated above and elaborated on in the Record, the court hereby GRANTS Defendant's Motion for Summary Judgment (Doc. 19) in its entirety.

This case is hereby DISMISSED WITH PREJUDICE. Costs taxed as paid. A separate order that summarizes the decisions of this memorandum opinion has been filed simultaneously with the clerk of court.

DONE and ORDERED this 16th day of July, 2003

Karon O. Bowdre

KARON O. BOWDRE
United States District Judge